**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | |
|---|---|
| IN RE: ) | CASE No.   15-21942 (JAM) |
| ) | |
| MED-X TRANS, INC., ) | CHAPTER   11 |
| ) | |
| Debtor ) | RE: ECF No. 70 |
| ) | |
| MED-X TRANS, INC., ) | |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| INTERNAL REVENUE SERVICE, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**MEMORANDUM OF DECISION ON OBJECTION TO CLAIM**
**AND MOTION FOR DETERMINATION OF TAX LIABILITY**

**I.   INTRODUCTION**

On November 6, 2015, Med-X Trans, Inc. (the "Debtor"), filed the above-captioned Chapter 11 case.  On December 11, 2015, the United States of America, Internal Revenue Service (the "IRS"), filed a proof of claim ("Claim No. 11"), in the Debtor's case.  On July 8, 2016, the Debtor filed an Objection to Claim No. 11 and Motion for Determination of Tax Liability pursuant to 11 U.S.C. § 505 (the "Objection to Claim", ECF No. 70).

A trial on the Objection to Claim was held on January 25 and 26, 2017.  During trial, the Debtor and the IRS each called witnesses and introduced exhibits into evidence.  For the reasons

that follow, the Objection to Claim is overruled and the Debtor's tax liability to the IRS is determined to be $330,790.87.

## II.     HISTORY OF PROCEEDINGS

On August 28, 2014, the Debtor and Med-X Transportation, LLC ("Trans LLC"), both filed Chapter 11 petitions in the United States Bankruptcy Court for the District of Connecticut. On November 6, 2015, in accordance with the provisions of 11 U.S.C. § 1112(b)(4)(J), both Chapter 11 cases were dismissed for failure to file or confirm a plan within the 300-day deadline set forth in 11 U.S.C. § 1121(e)(2). Following the dismissal of the cases on November 6, 2015, the Debtor then filed this Chapter 11 case (ECF No. 1).[1]

### A.     The IRS Proofs of Claim and the Objection to Claim

#### 1.    Claim 11-1

On December 11, 2015, the IRS filed Claim 11-1 in the total amount of $1,120,943.06, for pre-petition tax liabilities, penalties, and interest. The IRS Form 410 attached to Claim 11-1 set forth Federal Insurance Contributions Act ("FICA"), and Federal Unemployment Tax Act ("FUTA"), liabilities for the tax periods from December 31, 2009 through December 31, 2014. The tax liabilities set forth in Claim 11-1 were owed by the entities with federal tax identification numbers ending in 0211 (Trans LLC), 2340 (the Debtor), and 1380 (Med-X Enterprises, Inc. ("Enterprise")).

#### 2.    Claim 11-2

On March 28, 2016, the IRS amended Claim 11-1 by filing Claim 11-2 in the amount of $330,790.87. The IRS Form 410 attached to Claim 11-2 set forth FICA and FUTA liabilities for

---

[1] Trans LLC did not file a second Chapter 11 petition and has not operated since its prior Chapter 11 case, Case No. 14-21716, was dismissed.

the tax periods from December 31, 2012 through December 31, 2014, for taxes owed only by the Debtor, the entity with a federal tax identification number ending in 2340. (Med-X Exhibit 14).

### 3. Claim 11-3

On May 11, 2016, the IRS amended Claim 11-2 by filing Claim 11-3 in the amount of $634,964.33. The IRS Form 410 attached to Claim 11-3 set forth FICA and FUTA liabilities for the tax periods from December 31, 2012 through December 31, 2014, for taxes owed by the Debtor (the entity with a federal tax identification number ending in 2340) and Enterprise (the entity with a federal tax identification number ending in 1380). (Med-X Exhibit 14).

### 4. The Objection to Claim

On July 8, 2016, the Debtor filed the Objection to Claim asserting:

1. The Debtor's federal tax identification number ends in 2340. The Proof of Claim filed by the IRS includes taxes allegedly owed by non-debtor entities whose federal tax identification numbers end in different tax identification numbers (notably 0211 and 1380).

2. During the time periods set forth in the IRS Proof of Claim, the Debtor made payments of approximately $769,980.66, which payments have never been properly credited or applied to the Debtor's true tax obligations.

3. The IRS has previously assessed personal liability to officers and owners of the Debtor and have seized significant personal tax refunds from said officers and owners which seizures have never been properly credited to the Debtor's account.

4. The IRS has made assessments against the Debtor for WT-FICA and WT-FUTA for tax periods in which the Debtor had few or no employees resulting in the IRS overcharging and/or assessing taxes, penalties and interest for tax periods that were not owed.

5. The IRS claims that certain payments made by Debtor on account of Debtor's tax liabilities were returned for non-sufficient funds, but fails to reflect or credit the bank checks and/or replacement checks made by Debtor to the IRS in regard to those non-sufficient funds.

*Objection to Claim*, ¶¶1-5 (ECF No. 70).

**5.**     **Claim 11-4**

On October 25, 2016, after the Objection to Claim was filed, the IRS amended Claim 11-3 by filing Claim 11-4 in the total amount of $330,790.87.[2] The IRS Form 410 attached to Claim 11-4 sets forth FICA and FUTA obligations for the tax periods from December 31, 2012 through December 31, 2014, for taxes owed only by the Debtor, the entity with a federal tax identification number ending in 2340. (Government Exhibit 36).

### III.   FINDINGS OF FACT

The Court finds the following facts from documents filed in this case and the testimony and exhibits introduced at trial:

1.     In 2006, Hugh Viele, his wife Angelia Viele, and seven other individuals formed Trans LLC. The Vieles were members and officers of Trans LLC. Trans LLC was in the business of providing transportation to clients for non-emergency medical appointments.

2.     Trans LLC struggled to make its quarterly federal employment, FICA, and FUTA tax payments to the IRS. Trans LLC ceased doing business in December 2011. At that time, Trans LLC owed the IRS approximately $250,000 in taxes and $250,000 in penalties. The federal taxpayer identification number of Trans LLC ends in 0211. (Direct Examination of Hugh Viele at January 25, 2017 trial).

3.     In December 2011, at or about the time that Trans LLC ceased its business operations, the Vieles formed the Debtor. The Vieles are the members and officers of the Debtor. Mr. Viele applied for a federal tax identification number for the Debtor. The federal taxpayer identification number assigned by the IRS to the Debtor ends in 2340. (Direct Examination of Hugh Viele at January 25, 2017 trial).

---

[2] Claim 11-4 is the operative Proof of Claim. Claim Nos. 11-1, 11-2, 11-3 and 11-4 shall hereinafter be referred to as Claim No. 11.

4

      4.      Mr. Viele also formed Enterprise at the same time the Debtor was formed. Mr. Viele also applied for a federal tax identification number for Enterprise. The federal taxpayer identification number that was assigned by the IRS to Enterprise ends in 1380. (Direct Examination of Hugh Viele at January 25, 2017 trial).

      5.      In June 2012, Mr. Viele suffered a severe heart attack. For periods of time during Mr. Viele's recovery, the Debtor was managed by third parties. During the time that the Debtor was managed by third parties, the Debtor fell into arrears on its obligations to its creditors, including payments due and owing to the IRS. (Direct Examination of Hugh Viele at January 25, 2017 trial).

      6.      The Debtor's primary client is the State of Connecticut, Department of Social Services ("DSS"). The transportation services provided by the Debtor to DSS are paid through a third-party brokerage company hired by DSS known as Logisticare Solutions, LLC ("Logisticare"). Mr. Viele testified that delays by Logisticare in paying the Debtor for the services it provided to the DSS resulted in the Debtor's failure to timely pay it tax liabilities to the IRS. (Direct Examination of Hugh Viele at January 25, 2017 trial; Med-X Exhibit 16).

      7.      Mr. Viele created a chart listing all payments made by the Debtor to the IRS from 2012 through 2015 (the "Payment Chart", Med-X Exhibit 17 at 000517). Mr. Viele prepared the Payment Chart based upon his review of the Debtor's records, which include Electronic Federal Tax Payment System ("EFTPS") payment confirmations, bank statements, credit card statements, and checks. The payments made by the Debtor to the IRS from the period of February 16, 2012 to October 31, 2015 set forth in the Payment Chart total $769,980.66. (Direct Examination of Hugh Viele at January 25, 2017 trial; Med-X Exhibits 6, 9, 10, 11, 12).

8.  Mr. Viele provided the Payment Chart to the IRS to determine: (1) if the payments made by the Debtor were properly applied by the IRS; and (2) to which entity's tax liability (the Debtor, Trans LLC, or Enterprise) the IRS applied the payments. (Direct Examination of Hugh Viele at January 25, 2017 trial).

9.  The IRS representative returned the Payment Chart to Mr. Viele with notations indicating which payments were applied by the IRS, to which entities the payments were applied, and the tax period to which the payments were applied. (Direct Examination of Hugh Viele at January 25, 2017 trial; Med-X Exhibit 17 at 000518).

10. During trial, Mr. Viele testified that he believed certain payments on the Payment Chart were never applied by the IRS.[3] (Direct Examination of Hugh Viele at January 25, 2017 trial).

11. Mr. Viele worked closely with the Debtor's IRS revenue agent, Allison Kempe, to attempt to resolve the tax liabilities of Trans LLC and the Debtor simultaneously. As a condition of working with the Debtor, the IRS required the Debtor to make payments toward the outstanding tax liabilities of Trans LLC and to pay the Debtor's current taxes on a bi-weekly basis. (Direct Examination of Hugh Viele at January 25, 2017 trial).

12. The Vieles voluntarily wrote several checks in the amount of $7,000.00 from the Debtor's operating account to pay the tax obligations of Trans LLC. However, the Debtor rarely made its payments for FICA taxes on a timely basis, which resulted in the assessment of penalties and interest by the IRS against the Debtor. (Direct Examination of Allison Kempe at January 26, 2017 trial).

---

[3] For example, Mr. Viele identified a payment in the amount $40,978.30 on the Payment Chart that does not contain a corresponding notation from the IRS. Mr. Viele testified that if the IRS did not make a notation on the Payment Chart indicating that a payment was applied, that payment was not applied or were improperly applied by the IRS.

6

13. With respect to a payment in the amount of $40,978.30 on the Payment Chart, the IRS established that this payment was "scheduled" to be paid by the Debtor on April 24, 2013, but was later "cancelled" by the Debtor through the Debtor's EFTPS payment confirmations and bank statements. (Cross Examination of Hugh Viele at January 25, 2017 trial; Med-X Exhibit 6 at 000360, Med-X Exhibit 9 at 000391).

14. Several payments on the Payment Chart were scheduled to be paid, but were later cancelled by the Debtor. (Cross Examination of Hugh Viele at January 25, 2017 trial; Med-X Exhibits 6, 9).

15. At least six checks on the Payment Chart payable to the IRS written from the Debtor's operating account for tax periods in 2009 and 2010 contained "0211" in the memo portion of the check, which are the last four numbers of the taxpayer identification number of Trans LLC. (Cross Examination of Hugh Viele at January 25, 2017 hearing; Med-X Exhibit 9 at 000218-000220, 000229, 000303; Med-X Exhibit 12 at 000358).

16. Several EFTPS payments included on the Payment Chart were stopped by the Debtor.[4] (Cross Examination of Hugh Viele at January 25, 2017 trial; Med-X Exhibit 6 at 000283-00084, 000366).

17. Several of the payments listed on the Payment Chart were applied to the Debtor's 2012 and 2013 tax liabilities. (Cross Examination of Hugh Viele at January 25, 2017 trial; Government Exhibit 42 at 000391-00392).

18. Ms. Kempe was the IRS revenue officer assigned to the accounts of the Debtor, Trans LLC, and Enterprise. Ms. Kempe credibly testified about how the IRS applies payments from taxpayers to tax liabilities and specifically how the IRS applied the payments from the

---

[4] Mr. Viele did not contradict that the payments were stopped. Mr. Viele testified that he personally stopped payments to the IRS on several occasions. (Cross Examination of Hugh Viele at January 25, 2017 trial).

Debtor to the Debtor's tax liabilities. (Direct Examination of Allison Kempe at January 26, 2017 trial).

19. A taxpayer entity can direct a voluntary payment to another taxpayer entity if the intention to do so is designated on the payment instrument. If there is no designation as to how a taxpayer intends a payment to be applied, the IRS must apply the payment to the taxpayer's account. (Cross Examination of Allison Kempe at January 26, 2017 trial).

20. The IRS maintains a record of all payments made to the IRS by a taxpayer in a business master file (the "BMF Summary"). The BMF Summary contains the dates and amounts of payments made by a taxpayer and the tax periods to which payments are applied. (Direct Examination of Allison Kempe at January 26, 2017 trial).

21. The IRS also maintains account transcripts that detail activities with a taxpayer during various tax periods—such as when tax returns are filed, the amount of taxes assessed, payments made, penalties and interest that are assessed, credits to the account, additional assessments, and notifications of an offer and compromise (the "account transcripts"). (Direct Examination of Allison Kempe at January 26, 2017 trial).

22. The primary purpose of BMF Summaries and account transcripts are to show the payment history and the work of a revenue officer with a taxpayer. (Direct Examination of Allison Kempe at January 26, 2017 trial).

23. The BMF Summary and account transcripts maintained by the IRS for the Debtor show all tax payments made by the Debtor and Ms. Kempe's work with the Debtor.[5] (Direct Examination of Allison Kempe at January 26, 2017 trial; Government Exhibits 3, 4).

---

[5] The IRS also maintains BMF Summaries and account transcripts for Trans LLC and Enterprise. (Direct Examination of Allison Kempe at January 26, 2017 trial; Government Exhibits 1, 2, 5, 6).

24. All payments made by the Debtor to the IRS that were applied to the tax liability of Trans LLC were done so pursuant to the instruction of the Vieles. The Vieles indicated their instruction to apply payments to the tax liability of Trans LLC on the memo portion of a check, in the EFTPS system, or through the IRS's online payment system. (Cross Examination of Allison Kempe at January 26, 2017 trial).

25. On February 10, 2012, Trans LLC's attorney, Michelle Wynn, sent a letter to Ms. Kempe memorializing a conversation during which Ms. Wynn advised Ms. Kempe that Trans LLC's business operations had been transferred to the Debtor. Ms. Wynn further advised Ms. Kempe that the Debtor's principals agreed to continue to pay the tax obligations of Trans LLC, and that they had changed the structure of the business from a limited liability company to a corporation for tax and business reasons, not to evade the tax liabilities of Trans LLC. (Direct Examination of Allison Kempe at January 26, 2017 trial; Government Exhibit 10).

26. Ms. Wynn subsequently sent Ms. Kempe a proposal for an installment payment agreement to pay the tax liability of Trans LLC over time. (Direct Examination of Allison Kempe at January 26, 2017 trial; Government Exhibit 11). Based on the correspondence she received, Ms. Kempe understood and believed that the Debtor had obligated itself to pay the liabilities of Trans LLC.[6] (Cross Examination of Allison Kempe at January 26, 2017 trial; Government Exhibits 10, 11).

27. The IRS and Trans LLC entered into an Installment Agreement on June 29, 2012. (Government Exhibit 11). Ms. Kempe testified that she would not have recommended the IRS

---

[6] Ms. Kempe testified that absent such an agreement by the Debtor, the IRS would have sought alter ego liability against the Debtor at the time of its formation. The IRS is not permitted to collect taxes owed by one taxpayer entity from a related taxpayer entity absent a finding of alter ego liability. Ms. Kempe did not seek alter ego status in the Debtor's case because the Debtor's principals agreed to pay the obligations of Trans LLC. (Direct Examination of Allison Kempe at January 26, 2017 trial).

9

enter into the Installment Agreement with Trans LLC if the business operations of Trans LLC had ceased and/or the Debtor was unable or unwilling to pay the liabilities of Trans LLC. (Direct Examination of Allison Kempe at January 26, 2017 trial).

28. In or around April 2013, Ms. Kempe learned that the Debtor did not make all of the payments required under the Installment Agreement with Trans LLC, and that the Debtor was also failing to pay its taxes. At that time, Ms. Kempe performed a full case analysis of the Debtor, Trans LLC, and Enterprise. (Direct Examination of Allison Kempe at January 26, 2017 trial).

29. Ms. Kempe worked with Mr. Viele for several months to attempt to cure the Debtor's tax liability. On January 21, 2014, Ms. Kempe sent Mr. Viele an Installment Agreement which addressed the Debtor's then-outstanding tax liability. (Direct Examination of Allison Kempe at January 26, 2017 trial; Government Exhibit 13).

30. The Debtor executed the Installment Agreement on January 22, 2014. By executing the Installment Agreement, the Debtor acknowledged that it owed taxes for the third and fourth quarters of 2012, as well as the first, second, and third quarters of 2013. The total taxes, penalties, and interest owed as of January 22, 2014 was $133,361.19. The Installment Agreement further obligated the Debtor to pay the IRS an additional $10,000 per month for penalties and interest provided by law.[7] (Cross Examination of Allison Kempe at January 26, 2017 trial; Government Exhibit 13).

---

[7] During trial, Mr. Viele questioned how the IRS's claim against the Debtor could exceed $330,000 when it was filed less than one year after the execution of the Installment Agreement. Ms. Kempe testified that the higher amount set forth in Claim No. 11 was the result of penalties and interest that became due pursuant to the Installment Agreement, as well as penalties that were subsequently assessed for taxes that were not paid by the Debtor following that date.

10

31. During Ms. Kempe's time as the Debtor's revenue officer, the Debtor rarely made its payments for FICA taxes on time. The Debtor incurred significant penalties because of its tardy payments. (Direct Examination of Allison Kempe at January 26, 2017 trial).

32. The Debtor agreed to stay current on the Installment Agreement with Trans LLC as a condition of receiving an Installment Agreement for the Debtor. The Debtor defaulted under its Installment Agreement almost immediately. The Debtor's account was returned to Ms. Kempe for collection in or around April 2014. (Direct Examination of Allison Kempe at January 26, 2017 trial).

## IV. CONCLUSIONS OF LAW

### A. Objection to Proof of Claim

The thrust of the argument in the Objection to Claim is that the IRS improperly applied payments made by the Debtor to the tax liabilities of Trans LLC and/or Enterprise, which resulted in the improper assessment of penalties and interest against the Debtor. During trial, Mr. Viele testified that the Debtor would have been current on its tax liabilities, and that no penalties or interest should have been triggered, had the IRS applied all of the payments made by the Debtor to the tax liabilities of the Debtor, and not to the tax liabilities of Trans LLC. (Testimony of Hugh Viele at January 25, 2017 trial). For the reasons stated below, the Court is not persuaded by the arguments advanced by the Debtor.

A properly filed proof of claim is prima facie evidence of the validity and amount of the claim. Fed. R. Bankr. P. 3001(f). Unless a claim is challenged, it is deemed allowed under 11 U.S.C. § 502(a). A party who objects to a proof of claim must "produce evidence at least equal in probative force to that offered by the proof of claim and which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *In re Driscoll*, 379

11

B.R. 415, 420 (Bankr. D. Conn. 2008) (citations omitted). "If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence. The burden of persuasion is always on the claimant." *In re A-Plus Auto Wholesalers, LLC*, 379 B.R. 228, 231 (Bankr. D. Conn. 2007) (*quoting In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir. 1992).

The Debtor argues that no taxes are due to the IRS because the Debtor paid the IRS $769,980.66, and these payments have never been properly credited or applied by the IRS to the Debtor's tax liabilities. The Debtor asserts that the payments were either not applied at all, or were improperly applied to the tax obligations of Trans LLC and/or Enterprise, which improperly triggered penalties and interest to the Debtor. The Debtor is essentially asking that Claim No. 11 be disallowed in its entirety because the IRS did not apply all of the payments on the Payment Chart to the Debtor's tax liability.

Mr. Viele presented the Payment Chart to the IRS and it was returned to him with notations indicating which payments were applied by the IRS. The Debtor advanced the argument that the Payment Chart containing notations by the IRS is a recognition by the IRS that $769,980.66 in payments were made by the Debtor, but were not applied to the Debtor's tax liabilities. The Debtor also argued that the IRS improperly applied payments to non-debtor entities because the Payment Chart specifies only the tax period, and not the entities, to which the Debtor's payments were credited. The Court finds that the Debtor failed to meet its burden of proof on either point.

As noted above, Claim No. 11 and its supporting documents are prima facie evidence of the claim's validity. *See* Fed. R. Bankr. P. 3001(f). Therefore, it was the Debtor's burden at trial to put forth sufficient evidence to rebut this presumption by refuting one or more of the facts in

Claim No. 11. The Debtor provided the Court with voluminous evidence that attempted to refute the IRS's claim. The Court carefully reviewed the evidence submitted to ascertain whether any of the legal arguments and exhibits raise any doubts as to the validity of the IRS's claim. The Court finds that the Debtor has not put forth sufficient evidence to refute the IRS's claim. The Court will address each ground set forth in the Objection to Claim in turn.

    *i. Inclusion of taxes owed by non-debtor entities*

The Debtor's first argument is that Claim No. 11 improperly includes taxes owed by non-debtor entities whose federal tax identification numbers end in different tax identification numbers from the Debtor (namely, 0211 and 1380). The Objection to Claim was filed on July 8, 2016 (ECF No. 70). At that time, the operative proof of claim filed by the IRS was Claim 11-3, dated May 11, 2016. Claim 11-3 in the amount of $634,964.33, included taxes for the entities whose federal tax identification numbers ended in 2340 (the Debtor) and 1380 (Enterprise).[8] Thus, the evidence demonstrates that Claims 11-1 and 11-3 did include taxes attributable to Trans LLC and/or Enterprise.

However, after the Debtor filed the Objection to Claim, the IRS further amended Claim No. 11. Claim 11-4, dated October 25, 2016, was the operative proof of claim during trial. Claim 11-4 in the amount of $330,790.87 contains tax liability for only the Debtor—the entity whose federal tax identification number ends in 2340. As discussed above, IRS Form 410 attached to Claim 11-4 is prima facie evidence of the IRS's claim. The Debtor did not offer any evidence showing that Claim No. 11, as amended by Claim 11-4, improperly includes taxes

---

[8] The initial proof of claim filed by the IRS, dated December 11, 2015 (Claim 11-1), in the amount $1,120,943.06 included taxes for the entities whose federal tax identification numbers ended in 2340 (Med-X Trans, Inc.), 0211 (Trans LLC), and 1380 (Enterprise).

13

attributable to Trans LLC and/or Enterprise. Accordingly, the Debtor failed to meet its burden of proof on this issue.

   *ii.*  *Application of payments totaling $769,980.66*

   The Debtor next argues that it made $769,980.66 in payments to the IRS, but certain payments were never credited to the Debtor's tax liabilities. However, the Debtor failed to prove that even one of the payments made to the IRS were not properly applied by the IRS. The Debtor did not establish that there were any EFTPS payments, checks, or credit cards payments made toward the tax liabilities of the Debtor, but not applied to the Debtor's tax liabilities. (Med-X Exhibit 17; Government Exhibits 3, 4). To the contrary, the evidence establishes that: (1) several of the payments included on the Payment Chart were scheduled to be made, but were later cancelled by the Debtor; and (2) many of the payments on the Payment Chart were voluntarily directed by the Vieles to pay the tax liability of Trans LLC.

 Based on the testimony and exhibits introduced at trial, the Court concludes that the Debtor agreed to pay the tax liabilities of Trans LLC for two reasons: (i) to avoid the possibility that the IRS would seek alter ego liability against the Debtor; and (ii) to obtain an Installment Agreement for the Debtor. This conclusion is supported by Ms. Kempe's testimony during the trial, the written correspondence between Ms. Kempe and the Debtor's former attorney, and the checks signed by the Debtor's principals directing payments from the Debtor to be applied to Trans LLC's tax liability through a notation on the checks of "0211", the federal taxpayer identification number of Trans LLC. Furthermore, Mr. Viele testified that he and his wife made multiple payments out of the Debtor's operating account to pay the tax obligations of Trans LLC.

 After reviewing the evidence and assessing the credibility of the witnesses, the Court concludes that the Debtor has not rebutted the presumption that amount of the debt set forth in

14

the IRS's operative claim, Claim 11-4, is accurate. The Debtor's argument that payments made to the IRS were improperly applied to the obligations of Trans LLC and/or Enterprise is directly contradicted by the evidence and testimony during trial. Mr. Viele testified that he agreed to pay the tax liability of Trans LLC in order for the IRS to agree to work with him to resolve the tax liability of the Debtor. The Debtor failed to provide the Court with evidence that the IRS improperly applied any of the payments made by the Debtor to the debts of Trans LLC and/or Enterprise. Accordingly, the Debtor failed to meet its burden of proof on this issue raised in the Objection to Claim.

    *iii. Assessment of personal liability*

The Debtor also objects to Claim No. 11 on the grounds that the IRS "assessed personal liability to officers and owners of the Debtor and [] seized significant personal tax refunds from said officers and owners which seizures have never been properly credited to the Debtor's account." During trial, the Debtor did not offer any evidence to establish that the IRS seized the Vieles personal tax refunds nor did the Debtor offer any evidence showing that the IRS misapplied such assessments to the tax liabilities of Trans LLC and/or Enterprise. Therefore, the Court finds that the Debtor failed to meet its burden of proof on this issue.

    *iv. FICA and FUTA assessments*

The Debtor also objects to Claim No. 11 on the grounds that the IRS assessed FICA and FUTA taxes against the Debtor for tax periods during which the Debtor had few or no employees, resulting in overcharging of taxes. Mr. Viele testified that Enterprise had few or no employees, but that Enterprise paid FICA and FUTA taxes because the Debtor ran its payroll through both the Debtor and Enterprise. While it may be true that Enterprise paid FICA and/or FUTA taxes for employees it did not have, the Court finds that the Debtor was not overcharged

for FICA or FUTA taxes. The Debtor's employees were employed by the Debtor, not Enterprise, and so FICA and FUTA taxes were correctly assessed against the Debtor and are properly included in Claim No. 11.

Whether the Debtor paid the FICA and FUTA taxes that were assessed against Enterprise is of no consequence. As noted above, Claim No. 11 seeks payment of the FICA and FUTA taxes that are owed by the Debtor, not Enterprise. During trial, counsel for the Debtor stated his intention to file an amended tax return on behalf of Enterprise; however, doing so will not affect the tax liabilities of the Debtor. (Re-Direct Examination of Allison Kempe at January 26, 2017 trial). There is no evidence in the record to support the Objection to Claim on this ground. Accordingly, the Debtor failed to meet its burden of proof on this issue.

    *v. Crediting of bank checks and replacement checks*

Finally, the Debtor objects to Claim No. 11 on the grounds that the IRS failed to credit bank checks and/or replacement checks issued by the Debtor with respect to payments that were returned for non-sufficient funds. The testimony and exhibits introduced at trial do not support the Debtor's claim. The Debtor did not identify a single bank check or replacement check that was provided to, but not credited by, the IRS. In contrast, the IRS demonstrated that several checks written out of the Debtor's operating account were dishonored, and as such were not applied to the Debtor's account. The IRS also identified several instances where the Payment Chart included payments allegedly made by the Debtor which, according to the Debtor's own records, were either cancelled by Mr. Viele after they were scheduled or were dishonored. Accordingly, the Debtor failed to satisfy its burden of proof on this issue.

> *vi. Authority of the Court to Treat Tax Payments as Trust Fund Payments*

In Objection to Claim No. 11, the Debtor requests the Court to order the IRS to apply all payments made by the Debtor pursuant to a Chapter 11 Plan first to any trust fund portion of the tax liabilities owed by the Debtor. The Debtor argues that the Court has the authority to direct the application of payments to trust fund portions of taxes "if, as here, the assistance and participation of the Debtor's principals is essential to the Plan." *See United States v. Energy Resources Co., Inc.*, 495 U.S. 545, 551 (1990) (holding that a bankruptcy court has the authority to order the IRS to treat tax payments made by Chapter 11 debtor corporations as trust fund payments where the court determines that this designation is necessary for the success of a reorganization plan).

During trial, no evidence was offered by either party regarding whether the application of payments should first be made to any trust fund portions of taxes necessary for the success of the Debtor's Chapter 11 Pan. Accordingly, the Court declines to grant the requested relief at this time. This decision is without prejudice for the Debtor to seek such relief in connection with the confirmation of the Debtor's Fourth Amended Chapter 11 Plan and for any party to object to such relief if requested by the Debtor.

**V.    CONCLUSION**

Pursuant to Fed. R. Bankr. P. 3001(f), Claim No. 11 is prima facie evidence of the validity and amount of the IRS's claim against the Debtor. The Debtor failed to put forth sufficient evidence to refute any of the allegations essential to the legal sufficiency of the IRS's claim. Therefore, Objection to Claim No. 11 is overruled, Claim No. 11 is allowed pursuant to 11 U.S.C. § 502(b), and the Debtor's tax liability to the IRS is determined to be $330,790.87 in accordance with 11 U.S.C. § 505(a).

IT IS SO ORDERED at Bridgeport, Connecticut this 29th day of June 2017

BY THE COURT

*Julie A. Manning*
Chief United States Bankruptcy Judge
District of Connecticut